IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| CARL LEE CALLOWAY | § | |
| VS. | § | CIVIL ACTION NO. 1:06cv209 |
| DIRECTOR, TDCJ-CID | § | |

## MEMORANDUM OPINION

Petitioner Carl Lee Calloway, an inmate confined in the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se,* filed this petition for writ of habeas corpus.

## Factual Background

Petitioner was previously convicted of possession of a controlled substance in the Criminal District Court of Jefferson County, Texas. He was sentenced to 30 years imprisonment.

Petitioner was subsequently released on parole. On February 2, 2005, petitioner's release on parole was revoked by the Texas Board of Pardons and Paroles. On May 31, 2005, petitioner filed a state application for writ of habeas corpus concerning the revocation of his release on parole. On September 21, 2005, the Texas Court of Criminal Appeals denied the application.

## The Parole Revocation Proceeding

On May 25, 2004, a warrant was issued alleging petitioner had violated the terms of his release on parole. Petitioner was charged

with the following parole violations: (1) failure to report; (2) assault; (3) deadly conduct; (4) use of a knife to threaten bodily injury and (5) failure to pay supervision fees. Petitioner admitted committing the first and fifth violations and denied committing the remainder.

A revocation hearing was conducted on January 26, 2005. The hearing officer noted that petitioner had been found not guilty of the charge which led to the second alleged parole violation and that the district attorney's office had refused to prosecute the conduct which resulted in the third and fourth alleged parole violations.

The hearing officer determined petitioner was guilty of all five alleged violations of the terms of his release on parole. With respect to the first and fifth alleged violations, the hearing officer relied on petitioner's admissions and testimony from his parole officer. The parole officer testified plaintiff had failed to report on June 9, 2004, and had not paid any supervision fees since May 11, 2004.

With respect to the second, third and fourth alleged violations, the hearing officer stated he considered the following evidence:

Eugene Wilson, Beaumont Police Officer, testified: He [is] a

detective assigned to Robbery and Assault at the Beaumont Police Department.  He [was] assigned to two cases with the Offender as the suspect.  He was assigned an Assault case which occurred on/about 5/22/04.  He spoke with Wells, the complainant in the case.  After speaking with Wells, the Offender's sister wanted to file charges against Wells for Assault.  He explained to Ms. Calloway that she was injured in an accident when Wells was attempting to flee the area while she was being assaulted.  Calloway said she understood.  Calloway stated she was attempting to break up her brother, the Offender, and Wells while they were in a disagreement with each other.  While she was attempting to break them up Wells backed her car up and this is when she and the Offender was injured.  They fell to the ground when Wells backed her car up and left the area.  Calloway had scrapes to her legs and a cut to her calf.  Wells had scratch marks to her neck, her shirt was torn at the neck and she had a bite mark to her face.  She did not seek medical attention but wanted to file charges against the Offender for assaulting her.  She stated while she was attempting to flee the area, because she thought the Offender was going to kill her, she ran into a parked car while backing her vehicle.  In his professional opinion he feels that the Offender assaulted Wells and that the Offender and his sister's inquiry were a result of an accident when Wells was attempting to flee the scene.  He was never subpoenaed to testify in the County Court at Law regarding this case.

On 8/18/04, he was assigned a second case with the Offender as the suspect.  The charge was originally reported as an Aggravated Assault; however, after reviewing all evidence he determined the charge was Deadly Conduct.  He attempted to contact the complainant and witnesses with no success.  Agency policy is to send all Assaultive offenses to the District Attorney for Review.  After he failed to get a response from any one he forwarded the case and the District Attorney refused the charge.  He feels something was going on with the Offender, because of several offenses involving the Offender in such a short period of time

John Jules, Beaumont Police Officer, testified:  Upon arrival on the scene he met with Foxall and his mother.  The Offender was not present.  Foxall and his mother were

hysterical and in a state of fear. He had to be calmed down. When Foxall was able to give a statement, he stated the Offender, his uncle, chased him down the street with a knife. Foxall's mother, the Offender's sister, verified Foxall's statement. Jules was able to determine that the knife was a kitchen butcher knife. Foxall stated he and the Offender were involved in a disturbance earlier in the day. Foxall went to the residence to speak with his mother and the Offender became upset again and this is when he pulled the knife on him and chased him down the street. He believed Foxall and his mother on the night in question and believed that a crime had taken place. Mother wanted to file charges against the Offender. He does not remember having any contact with the Offender during the initial contact with Foxall; however, it is possible he went to the scene later and arrested the Offender based on the fact that he had warrants for his arrest.

Eric Wilson, Beaumont Police Officer, testified: He was dispatched to the scene and met with the Offender and his sister, last name Calloway. They both gave statements re-

garding the incident. He observed in the parking lot a car with damage to it; which occurred when the suspect at that time in the case fled the scene. The Offender, whom Wilson identified, and his sister stated that they wanted to file charges on Deborah Wells for assault. They both stated she assaulted them by hitting them with her vehicle while pulling away from the residence and she also ran into another vehicle. The Offender had scratches to his body, as did his sister. The Offender and his sister stated Wells was the aggressor. Wells accused him of seeing another woman. The Offender stated the other woman was present at the time and Wells was attacking her. The Offender stated he stepped in between them and Wells turned on him. The Offender then threw his beer on her to calm her down; however, this only made her angrier. She then began moving toward her car and he went after her to calm her down.

After leaving the initial scene, he was advised by dispatch that Wells was at the police station wanting to speak to him. Upon arrival at the station he met with Wells. She was very emotional and very upset. She had to be calmed down so he

4

could speak to her. Prior to going to the police station she phoned her daughter, who brought her to the station. Wells stated she went to visit the Offender and had to leave to go visit her godchildren. He became upset that she was leaving. He told her she was not leaving. He followed her to her vehicle and she made it to the driver's seat of the car. It was at this time that the Offender attacked her. He hit her repeatedly in the face and bit her on the face. His sister came to try and pull him off of her. It was at this time she was able to put her car in reverse and punch the accelerator. She traveled backwards and the Offender and his sister fell out of the door of the car and she struck a car while going backwards. She was able to leave the scene at this time. When he met with Wells he observed a bite mark to her cheek, scratches to her neck, her shirt was torn and her eyes were swollen shut.

Both stories matched the injuries sustained; however, after speaking with Wells, he determined that it would be physically impossible for the Offender to inflict the injuries to Wells as he stated. The Offender also never mentioned that he bit her. Wilson also stated it would be impossible for the Offender to bite and punch Wells while being dragged by her car door. He feels in his professional opinion the Offender assaulted Wells in the manner Wells described on the date the incident occurred. He was never subpoenaed to County Court to testify regarding this case.

Offender testified: He did not violate any laws of the State of Texas. Judge Davis found him not guilty of Assault in the County Court at Law. Wells was present but did not testify in court. He was trapped in her car door when she was attempting to leave and he punched her and bit her trying to "get out." He was hanging onto the door with his left arm. He only threw the beer in her face to calm her down after she slapped him in the face. It is unknown to him why he did not walk away from her after he threw the beer in her face, but he followed her to her car.

He did not commit the offense of Deadly Conduct because the DA refused the charge. It is impossible for him to chase his nephew, as he is unable to run due to a medical condition. He heard someone knocking on his nieces' window and he went to a

5

kitchen to get a knife. He met his nephew who pulled his arm and pulled him onto the porch area of the home. At this time the Offender stated he displayed the knife and his nephew ran off.

The hearing officer also considered the record from petitioner's preliminary revocation hearing, which included an affidavit from Ms. Wells. Neither Ms. Wells nor Mr. Foxall appeared at the revocation hearing, although subpoenas were issued for both individuals. The hearing officer concluded that the hearsay statements concerning what these individuals told police officers bore sufficient indicia of reliability because they were excited utterances.

The hearing officer concluded petitioner had committed all five alleged violations and recommended petitioner's release on parole be revoked. This recommendation was adopted by the Board of Pardons and Paroles.

Petitioner subsequently filed a motion asking the Board to reopen his hearing. As a result of the motion, the finding that petitioner had committed assault was reversed. No other findings were changed.

## Analysis

In *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972), the Supreme Court recognized that a parole revocation hearing is not a criminal

6

prosecution and, as a result, "the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations."  However, as a person's liberty is at stake, due process requires that a parolee be given a fair and meaningful opportunity to refute and challenge adverse evidence to assure that relevant findings are based on verified facts.  To achieve this end, the Court stated a parolee was entitled to the following procedural safeguards:  (a) written notice of the alleged parole violation; (b) disclosure of the evidence against him; (c) an opportunity to be heard personally and to present evidence; (d) the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation; (e) a hearing before a neutral and detached body and (6) a written statement by the finder of fact describing the evidence reviewed and the reasons for revoking parole.

Petitioner asserts his release on parole was improperly revoked because he did not have the opportunity to confront and cross-examine the witnesses against him--Ms. Wells and Mr. Foxall--and that the hearing officer improperly relied on hearsay testimony.

The testimony of Ms. Wells would have only been relevant to the allegation that petitioner committed assault.  As stated above,

7

the finding that petitioner committed assault was ultimately reversed. Any complaint petitioner may have concerning the testimony of Ms. Wells is therefore moot.

With respect to the testimony of Mr. Foxall, petitioner has at least arguably demonstrated he may have been deprived of the opportunity to cross-examine the witness against him. However, under the circumstances surrounding the incident with Mr. Foxall, the hearing officer's ruling that his statements should be admitted under the excited utterance exception to the hearsay rule was well taken. The testimony by Officer Jules was that Mr. Foxall was hysterical when Officer Jules arrived to take his statement. This exception to the hearsay rule provides a sufficient indicia of reliability to have permitted Officer Jules to testify concerning the statements of Mr. Foxall.

Moreover, even if it could be concluded petitioner was denied the right to confront and cross-examine the witnesses against him, such error would be harmless in this case. Petitioner admitted he committed two of the alleged violations of the terms of his release on parole. There was also testimony from petitioner's parole officer demonstrating he committed these violation. As these violations would have been sufficient to justify the revocation of his release on parole, any error made with respect to the other

8

three alleged violations would be harmless.  *United States v. McCormick*, 54 F.3d 214 (5th Cir. 1995); *Frick v. Quinlin*, 631 F.2d 37 (1980); *Spann v. Wainwright*, 431 F.2sd 482 (5th Cir. 1970); *Ybarra v. Johnson*, No. 00-10351 (5th Cir. Mar. 1, 2001) (unpublished).  Petitioner is therefore not entitled to relief.

## Conclusion

For the reasons set forth above, this petition for writ of habeas corpus shall be denied.  An appropriate Final Judgment shall be entered.

**SIGNED** this the **14** day of **January, 2009.**

_____
Thad Heartfield
United States District Judge